# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 14, 2015 Session

## IN RE JAMEL H., ET. AL.[1]

### Appeal from the Juvenile Court for Hamilton County
### Nos. 259926, 259927      Hon. Robert D. Philyaw, Judge

---

### No. E2014-02539-COA-R3-PT-FILED-JULY 13, 2015

---

This is a termination of parental rights case in which the Tennessee Department of Children's Services filed a petition to terminate the parental rights of the mother to her two minor children and of the father to his minor child that he shared with the mother. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of the mother's parental rights on the statutory grounds of abandonment for failure to visit, abandonment for failure to provide a suitable home, and failure to comply with the requirements contained in the permanency plan. The court found that clear and convincing evidence existed to support the termination of the father's parental rights on the statutory grounds of abandonment for failure to provide a suitable home and failure to comply with the requirements contained in the permanency plan. The court also found that termination of each parent's rights was in the best interest of the children. The parents appeal. We affirm the court's termination of the mother's parental rights but reverse the court's termination of the father's parental rights.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
### Affirmed in Part; Reversed in Part; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Rachel M. Wright, Chattanooga, Tennessee, for the appellant, Ann H.

David C. Veazey, Chattanooga, Tennessee, for the appellant, Johnny J.

---

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Herbert H. Slatery, III, Attorney General and Reporter, and Rebekah A. Baker, Senior Counsel, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

## I.  BACKGROUND

Jamel H. was born to Ann. H. ("Mother") in April 2005.[2]  Breanna J. was born to Mother and Johnny J. ("Father") in July 2009.  Mother lived with Father, who assisted her in caring for Jamel and Breanna (collectively "the Children") until he was arrested for violating his probation on November 4, 2011.  He was subsequently ordered to serve a ten-year sentence and was incarcerated at Turney Center Industrial Complex.  The Children remained with Mother, who moved in with her father and her uncle.  Mother had received assistance from the Tennessee Department of Children's Services ("DCS") as a minor due to her father's use and manufacturing of methamphetamines.  Mother eventually left Jamel at the residence and took Breanna with her to look for more suitable housing.  Jamel was placed into protective custody on October 17, 2012, after Mother's father was hospitalized and the residence was condemned and deemed unsuitable for habitation.  Thereafter, Mother attended a child and family team meeting with Breanna on October 22, 2012.  Breanna was placed into protective custody when Mother tested positive for marijuana and professed that she was unable to provide for herself or the Children.  The Children were subsequently adjudicated as dependent and neglected and placed into foster care.

DCS developed four permanency plans from November 2012 until October 2013.  These plans were ratified by the trial court.  All four plans required Mother to complete an alcohol and drug assessment and follow all recommendations, submit to random drug screens, participate in domestic violence counseling and education, participate in grief counseling, obtain and maintain stable housing for three months, obtain and maintain a legal income, sign all necessary releases, notify DCS of any changes in circumstances, visit the Children, and apply for TennCare.  Three of the plans required Father to obtain and maintain stable housing for three months, obtain and maintain a legal income, sign all necessary releases of information, and notify DCS of changes in circumstances.

On March 17, 2014, DCS filed a petition to terminate each parent's parental rights to their respective children.  DCS alleged that termination was supported by the statutory grounds of abandonment for failure to visit and for failure to provide a suitable home and substantial noncompliance with the permanency plans.  Relative to Father, DCS further

---

[2] Mother identified Eric R. as the biological father of Jamel H.  Eric R.'s rights were also terminated at the hearing, but he is not a party to this appeal.

alleged that he had never visited Breanna, that DCS had been unable to assist him in providing a suitable home because he was incarcerated, and that he had failed to comply with the requirements contained in the permanency plan by not providing a suitable home or visiting Breanna.

A hearing was held at which several witnesses testified on September 29, 2014. Kalia Williams, a family service worker for DCS, testified that the Children have remained in the same foster home since June 2013. She asserted that the Children are "doing well" and "seem[] to have adjusted very well." She stated that they each have their own rooms and are the only children in the foster home.

Ms. Williams testified that Father had not visited Breanna since her removal. She acknowledged that Father was incarcerated at the time of removal and had been incarcerated since that time. She related that she communicated with Father via mail and by telephone. She asserted that Father had not completed any requirements contained in the permanency plans but then admitted that Father had maintained contact with DCS. She also admitted that she did not send Father any releases for information and that he was unable to maintain housing or provide proof of an income due to his incarceration. She agreed that she would have revised the requirements in the permanency plans if she knew that he would remain incarcerated for such a long period of time. She acknowledged that Father had actually not failed to comply with the requirements in the permanency plans but asserted that his incarceration was simply too long for DCS to work with him. She last spoke with him in April 2014, when he advised her that he did not want his parental rights terminated. She asked him to provide her contact information for family members that might provide a home for Breanna. He did not provide her with the requested information. She related that he advised her that he was in a program that provided for his release within ten months.

Ms. Williams testified that she discussed the criteria and procedures for termination with Mother and that she later hand-delivered a letter to Mother in which she outlined the consequences for failure to follow the requirements in the permanency plans. She stated that Mother visited consistently until May 2013. She related that since that time, Mother had not called, written letters, or sent anything for the Children. She claimed that Mother's brother could not even provide contact information for Mother. She noted that Mother had also not completed any of the requirements in the plans.

Ms. Williams agreed that Mother had been in foster care herself until she reached the age of majority. She knew that Mother did not drive or have a cell phone. She also agreed that Mother had been in and out of an abusive relationship since the Children were removed from her custody. She claimed that she made two referrals to a shelter for Mother in May 2013 but that she was unable to confirm Mother's placement because she

could not locate Mother. She stated that Mother claimed that her boyfriend prevented her from using the telephone and visiting the Children. She acknowledged that she observed Mother's injuries. Likewise, she testified that she believed that Mother's boyfriend prevented Mother from visiting the Children.

Father testified that he lived with Mother when Breanna was born and that he remained in the home with them providing daily care for Breanna until his incarceration on November 4, 2011. He provided that he was serving a ten-year sentence and was not eligible for parole until August 2015. He noted that he would serve approximately two more years if he was not paroled. He agreed that Breanna needed permanency and that he was not in a position to care for her. He acknowledged that Breanna was happy in her current placement and that adoption was likely best for her.

Foster Mother testified that the Children had been in her care for approximately one year and five months. She related that the Children are "fantastic" and "wonderful." She believed that they had bonded to her and her husband and asserted that she intended to adopt the Children if they became free for adoption. She provided that she and her husband could provide for the Children's educational, medical, financial, and emotional needs. She stated that the Children had been in therapy for "anger issues" but claimed that they are responding to therapy and seem well-adjusted. She worked with Breanna specifically to address anger issues and a healthy way to express feelings. She noted that Breanna is "doing great" in school and that Jamel is "getting up to grade level."

Mother agreed that Father was living with her when Breanna was born and that he remained with her and the Children until he was arrested and subsequently incarcerated. She testified that she currently lives with her father and that she is unemployed. She agreed that she is unable to provide for the Children but claimed that she could provide for them in approximately two months. She acknowledged that she had not even visited the Children since May 2013 and that she had not completed any requirements contained in the permanency plans. She explained that her boyfriend prevented her from visiting the Children and working with DCS to complete the requirements contained in the plans. She stated that she left her boyfriend at some point in 2013 but then went back to him. She insisted that she is no longer with him. She acknowledged that the Children are doing well in their foster home but asserted that her rights should not be terminated because the Children need their mother and because she wanted them to be with her.

Following the presentation of the above evidence, the trial court terminated Mother's parental rights by order, dated November 24, 2014, on the following grounds: abandonment for failure to visit, abandonment for failure to provide a suitable home, and substantial noncompliance with the permanency plans. The court also found that termination of her parental rights was in the best interest of the Children. Likewise, the

trial court terminated Father's parental rights by order, dated November 24, 2014,[3] on the following grounds: abandonment for failure to provide a suitable home and substantial noncompliance with the permanency plans. The court also found that termination of his parental rights was in the best interest of Breanna. This timely appeal followed.

## II.    ISSUES

We consolidate and restate the issues raised on appeal as follows:

A. Whether clear and convincing evidence supports the trial court's termination of Mother's parental rights to the Children based upon her abandonment for failure to visit pursuant to Tennessee Code Annotated section 36-1-102(A)(i).

B. Whether clear and convincing evidence supports the trial court's termination of each parent's parental rights based upon their abandonment for failure to provide a suitable home pursuant to Tennessee Code Annotated section 36-1-102(A)(ii).

C. Whether clear and convincing evidence supports the trial court's termination of each parent's parental rights based upon their failure to comply with the requirements contained in the permanency plans pursuant to Tennessee Code Annotated section 37-1-166(g)(1).

## III.    STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of

---

[3] Following the hearing, the trial court stated that termination of Father's parental rights to Breanna was supported by the statutory grounds of abandonment for failure to visit and abandonment by engaging in behavior that exhibited a wanton disregard for her welfare. Neither of these abandonment grounds are included in the final order terminating Father's parental rights to Breanna. Notably, the ground of wanton disregard was not even alleged in the termination petition.

natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

> (2) [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV.  DISCUSSION

### A.

In terminating Mother's parental rights based upon the statutory ground of abandonment for failure to visit, the court considered the four months preceding March 17, 2014, the filing date of the termination petition. Thus, the relevant time period was November 16, 2013, to March 16, 2014. Mother concedes that she had not visited the Children since May 2013 but asserts that her failure to visit was not willful. She claims that her abusive boyfriend prevented any attempt to visit the Children. DCS responds that Mother chose her relationship over the Children. DCS notes that Mother left her boyfriend and then returned to him at some point in 2013.

A parent's willful failure to visit the child "means the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation." Tenn. Code Ann. § 36-1-102(1)(E). Token visitation is defined as "visitation, under the circumstances of the individual case, [that] constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(c).

This court has consistently held that the term willfulness as it applies to a party's failure to visit must contain the element of intent. *In re Swanson*, 2 S.W.3d 180, 188-89 (Tenn. 1999). The element of intent utilized in termination proceedings "does not require the same standard of culpability as is required by the penal code." *In re Audrey S.*, 182 S.W.3d at 863. "Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *Id.* "[A] person acts 'willfully' if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing." *Id.* at 863-64.

The Supreme Court has held that "a parent who attempted to visit and maintain relations with his child, but was thwarted by the acts of others and circumstances beyond his control, did not willfully abandon his child." *In re A.M.H.*, 215 S.W.3d at 810 (citing *Swanson*, 2 S.W.3d at 189). However, "[a] parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009) (citation omitted). In *In re A.M.H.*, the Court was "presented with a situation in which the parents of [the child] actively pursued legal proceedings to regain custody [ ] during the 'abandonment' period but failed to visit for a period of four consecutive months immediately prior to the filing of a petition for termination of parental rights." 215 S.W.3d at 810.

Here, the record reflects that Mother consistently visited the Children until May 2013, after which time, she claims that she was subject to abuse and control by her boyfriend and that he prevented her from visiting the Children. Ms. Williams conceded that she observed Mother's injuries and believed that Mother was likely prevented from maintaining consistent visitation with the Children. Accordingly, we conclude that the record did not contain clear and convincing evidence to establish that Mother abandoned the Children by willfully failing to visit during the requisite time period. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Mother's parental rights. Tenn. Code Ann. § 36-1-113(c).

B.

A parent may be found to have abandoned his or her child by failing to establish a suitable home. The relevant abandonment statutory provision provides, in pertinent part,

> The child has been removed from the home of the [parents] as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child [ ], and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed

finds, that the department or licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the [parents] to establish a suitable home for the child, but that the [parents] have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a [parent] in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the [parent] toward the same goal, when the [parent] is aware that the child is in the custody of the department[.]

Tenn. Code Ann. § 36-1-102(1)(A)(ii) (emphasis added). Termination for failure to provide a suitable home requires a finding, supported by clear and convincing evidence, that a parent failed to provide a suitable home for his or her child even after DCS assisted that parent in his or her attempt to establish a suitable home. Tenn. Code Ann. § 36-1-102(1)(A)(ii).[4] DCS is required to use its "superior insight and training to assist parents . . . whether the parents ask for assistance or not." *State, Dep't of Childrens Servs. v. Estes*, 284 S.W.3d 790, 801 (Tenn. Ct. App. 2008).

*Mother*

Here, the Children were removed from Mother's care on two separate dates in October 2012; thus the relevant time period for Jamel is from October 18, 2012, to February 18, 2013, and for Breanna is from October 23, 2012, to February 23, 2012. Mother concedes that she failed to provide a suitable home for the Children but argues that her failure was a result of DCS's lack of assistance. She acknowledges that Ms. Williams attempted to find her a space in two shelters in May 2013 but asserts that the record is devoid of any evidence concerning DCS's efforts in the four months following removal. She claims that she was willing to work with DCS as evidenced by her attendance at several child and family team meetings and her consistent visitation with the Children until May 2013. DCS responds that it made reasonable efforts to assist Mother but that Ms. Williams was unable to locate her when she found her a place to stay

---

[4] During the pendency of this action, the Supreme Court issued an opinion in which it specifically overruled the progeny of cases requiring "DCS to prove by clear and convincing evidence that it made reasonable efforts to reunify as a precondition to termination of parental rights." *In re Kaliyah S.*, 455 S.W.3d 533, 555, n. 34 (Tenn. 2015). However, that holding does not abrogate DCS's responsibility to make reasonable efforts to assist parents in establishing a suitable home pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(ii).

in May 2013. We agree with Mother that the record is devoid of any evidence that DCS made any efforts related to housing during the relevant time period. Accordingly, we conclude that the record did not contain clear and convincing evidence to establish that Mother abandoned the Children by failing to provide a suitable home. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Mother's parental rights. Tenn. Code Ann. § 36-1-113(c).

*Father*

Father argues that this statutory ground of termination is inapplicable to him because the Children were not removed from his home. He notes that he was incarcerated at the time of Breanna's removal and that he remained incarcerated throughout the entirety of Breanna's involvement with DCS. DCS agrees with Father and argues that the trial court improperly terminated his parental rights based upon the statutory ground of abandonment for failure to provide a suitable home. We agree that this ground is inapplicable to Father when Breanna was removed from Mother's care and when DCS admittedly could not assist Father in establishing a suitable home while he was incarcerated. Accordingly, we conclude that the record did not contain clear and convincing evidence to establish that Father abandoned Breanna by failing to provide a suitable home. This conclusion does not end our inquiry because only one statutory ground is required to support the termination of Father's parental rights. Tenn. Code Ann. § 36-1-113(c).

C.

Tennessee law requires the development of a plan of care for each foster child and further requires that the plan include parental responsibilities that are reasonably related to the plan's goal. Tenn. Code Ann. § 37-2-403(a)(2)(A). A ground for termination of parental rights exists when a petitioner proves by clear and convincing evidence that "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). To establish noncompliance, the trial court must initially find "that the requirements of the permanency plans are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place." *In re M.J.B.*, 140 S.W.3d at 656; *see In re Valentine*, 79 S.W.3d at 547. When the trial court does not make such findings, the appellate court should review the issue de novo. *In re Valentine*, 79 S.W.3d at 547. Second, the court must find that the parent's noncompliance is substantial, *In re M.J.B.*, 140 S.W.3d at 656, meaning that the parent must be in "noncompliance with requirements in a permanency plan that are reasonable and related to remedying the conditions that warranted removing the child from the parent's custody." *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12

(Tenn. Ct. App. June 3, 2003). To assess a parent's substantial noncompliance with a permanency plan, the court must weigh "both the degree of noncompliance and the weight assigned to that particular requirement." *Id.* at *12. Conversely, "[t]erms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant." *In re Valentine*, 79 S.W.3d at 548-49.

*Mother*

Mother does not assert that she complied with the requirements contained in the permanency plans. She also does not provide an explanation for her noncompliance. Indeed, she did not take issue on appeal with the court's termination of her parental rights based upon this statutory ground. Having reviewed the record, we conclude that there was clear and convincing evidence to establish that Mother failed to substantially comply with the requirements contained in the permanency plans. Accordingly, a statutory ground supported the termination of her parental rights.

*Father*

Father concedes that he did not substantially comply with the requirements contained in the permanency plans. He asserts that the requirements of the permanency plans were unreasonable as applied to him, an incarcerated parent that never even received a copy of the permanency plans. He notes that he maintained contact with DCS, the only requirement that was seemingly applicable in his situation. DCS agrees with Father and argues that the trial court improperly terminated his parental rights based upon the statutory ground of substantial noncompliance with the permanency plans.

Pursuant to the permanency plans, Father was required to provide proof of a legal income; provide proof of a safe, stable living environment; sign releases of information as necessary; and maintain contact with DCS. Father remained in contact with DCS but did not complete any other requirements. Ms. Williams conceded that she never sent Father any requests for release of information. Father was simply unable to complete the remainder of the requirements due to his incarceration. With these considerations in mind, we conclude that the record did not contain clear and convincing evidence to support the termination of Father's parental rights to Breanna based upon his substantial noncompliance with the permanency plans. Accordingly, we reverse the trial court's termination of Father's parental rights to Breanna because DCS failed to provide clear and convincing evidence to establish the statutory grounds pled in the termination petition and found by the trial court.

D.

Having concluded that there was clear and convincing evidence establishing at least one statutory ground to terminate Mother's parental rights, we must now consider whether termination of her parental rights was in the best interest of the Children. Although Mother has not appealed the court's best interest finding, we have reviewed the issue because of the gravity and finality that this decision will have on her parental rights. *See In re Arteria H.*, 326 S.W.3d 167, 184 (Tenn. Ct. App. 2010) (considering the best interest issue even though the issue was not raised on appeal). Following our review, we conclude that there was clear and convincing evidence to establish that termination of Mother's parental rights was in the best interest of the Children pursuant to Tennessee Code Annotated section 36-1-113(i).

## V.     CONCLUSION

The judgment of the trial court is affirmed as to the termination of Ann H.'s parental rights to Jamel H. and Breanna J. The judgment of the trial court is reversed as to the termination of Johnny J.'s parental rights to Breanna J. Costs of the appeal are taxed one-half to the appellant, Ann H., and one-half to the appellee, State of Tennessee, Department of Children's Services.

_____
JOHN W. McCLARTY, JUDGE